ACCEPTED
15-25-00003-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 2:58 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00003-CV

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 2:58:23 PM
CHRISTOPHER A. PRINE
Clerk

LONE STAR NGL PRODUCT SERVICES, LLC
(*in its own capacity and as assignee*),
*Plaintiff/Joint Appellant,*

v.

EAGLECLAW MIDSTREAM VENTURES LLC
AND CR PERMIAN PROCESSING, LLC,
*Defendants/Joint Appellant.*

Petition for Permissive Interlocutory Appeal
from the Texas Business Court, 11th Division
Trial Court No. 24-BC11A-0004

BRIEF OF LONE STAR NGL PRODUCT SERVICES, LLC, AS JOINT APPELLANT

NORTON ROSE FULBRIGHT
Andrew Price
State Bar No. 24002791
andrew.price@nortonrosefulbright.com
Rafe A. Schaefer
State Bar No. 24077700
rafe.schaefer@nortonrosefulbright.com
Timothy Shinn
State Bar No. 24125409
timothy.shinn@nortonrosefulbright.com
1550 Lamar St. Suite 2000
Houston, Texas 77010
(713) 651-5151

ALEXANDER DUBOSE & JEFFERSON
William J. Boyce
State Bar No. 02760100
bboyce@adjtlaw.com
1844 Harvard St.
Houston, Texas 77008
(713) 523-2358

COUNSEL FOR LONE STAR NGL PRODUCT SERVICES, LLC
ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Plaintiff/Joint Appellant:      Lone Star NGL Product Services LLC ("***Lone Star***"),
which is now known as
Energy Transfer GC NGL Product Services LLC
in its own capacity and as assignee of
Energy Transfer GC NGL Marketing LLC,
Energy Transfer GC NGL Fractionators LLC,
Energy Transfer GC NGL Pipelines LP,
Energy Transfer Mont Belvieu NGL Pipelines LLC,
Energy Transfer Mont Belvieu NGLs LP, and
Energy Transfer GC NGLs LLC

Counsel for
Plaintiff/Joint Appellant:      Andrew Price
Rafe A. Schaefer
Timothy Shinn
NORTON ROSE FULBRIGHT US LLP
1550 Lamar St. Suite 2000
Houston, Texas 77010-3095
(713) 651-5151

William J. Boyce
ALEXANDER DUBOSE & JEFFERSON
1844 Harvard St.
Houston, Texas 77008
(713) 523-2358

| | |
|---|---|
| Respondents/Joint Appellants: | EagleClaw Midstream Ventures LLC and CR Permian Processing, LLC (collectively, "*EagleClaw*") |
| Counsel for Respondents/ Joint Appellants: | Fields Alexander<br>Thomas E. Ganucheau<br>Mary Kate Raffetto<br>Parth S. Gejji<br>Garrett S. Brawley<br>Cassie Maneen<br>BECK REDDEN LLP<br>1221 McKinney, Suite 4500<br>Houston, Texas 77010-2010<br>(713) 951-3700 |
| Trial Court: | Hon. Sofia Adrogué<br>Texas Business Court, 11th Division<br>301 Fannin Street<br>Houston, Texas 77002<br>Phone: (713) 274-1067 |

## TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel ...................................................................1

Table of Contents ........................................................................................3

Index of Authorities ....................................................................................5

Statement of the Case..................................................................................8

Statement Regarding Oral Argument ..........................................................1

Issue Presented............................................................................................2

Introduction.................................................................................................3

Statement of Facts.......................................................................................4

    I.      EagleClaw and Lone Star Enter Into Contracts Where EagleClaw Agrees to Sell Its First-Processed Y-Grade Natural Gas Liquids to Lone Star. ...................................................................................4

    II.     Lone Star Sues EagleClaw. ...............................................................4

    III.    Lone Star and EagleClaw Sign the September 13, 2024 Subsequent Agreement, Which Reflects Their Agreement to Litigate in Business Court. ..................................................................5

    IV.    Based on the Subsequent Agreement, the Parties Jointly Removed the Case to Business Court and Responded to Subject-Matter Jurisdiction Inquiries Raised by the Trial Court. ......................7

    V.     The Trial Court Stays Its Remand Order and Certifies a Permissive Appeal; This Court Accepts the Permissive Appeal. .......10

Standard of Review ...................................................................................11

Summary of the Argument.........................................................................12

Argument...................................................................................................13

I.    The Trial Court Erred by Giving no Effect to the September 13, 2024 Subsequent Agreement and Section 25A.004(d)(2). ..................15

II.   H.B. 19's Timing Provision Does Not Limit the Texas Business Court's Subject-Matter Jurisdiction. ..................................................19

III.  Additional Authorities Confirm that Section 8 Does Not Limit Subject-Matter Jurisdiction. ............................................................25

      A.    Section 8 Is More Limited Than Other Timing Provisions. ............................................................................................25

      B.    *Prystash* Confirms That Section 8 Does Not Limit Subject-Matter Jurisdiction. ..................................................28

      C.    *Fain* Shows the Legislature's Enactment of H.B. 19 Confers Subject-Matter Jurisdiction on the Texas Business Court. ..............................................................................................30

IV.   H.B. 19's Section 8 Is at Most a Procedural Limitation. ....................32

V.    The Remand Order Creates Inefficiency and Thereby Frustrates Legislative Intent. ..........................................................................34

Conclusion and Prayer .........................................................................37

Certificate of Compliance .....................................................................39

Certificate of Service ...........................................................................40

# INDEX OF AUTHORITIES

**CASES**            **PAGE(S)**

*Interest of A.F.*,
653 S.W.3d 730 (Tex. App.—Fort Worth 2019, no pet.)..................................29

*Ex parte Abell*,
613 S.W.2d 255 (Tex. 1981) ...........................................................................33

*Able Supply Co. v. Moye*,
898 S.W.2d 766 (Tex. 1995) ...........................................................................35

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)........................................................................................20

*BMG Direct Mktg., Inc. v. Peake*,
178 S.W.3d 763 (Tex. 2005) ...........................................................................17

*Cameron v. Terrell & Garrett, Inc.*,
618 S.W.2d 535 (Tex. 1981) .....................................................................21, 22

*Carter v. Harris Cnty. Appraisal Dist.*,
409 S.W.3d 26 (Tex. App.—Houston [1st Dist.] 2013, no pet.)......................11

*In re Crawford & Co.*,
458 S.W.3d 920 (Tex. 2015) ...........................................................................29

*In re Dep't of Family & Protective Servs.*,
273 S.W.3d 637 (Tex. 2009) (Hecht, J. dissenting) ........................................35

*Eddins-Walcher Butane Co. v. Calvert*,
298 S.W.2d 93 (Tex. 1957)..............................................................................20

*Energy Transfer GC NGL Prod. Servs., LLC v. Jamie Welch, et al.*,
No. 25-BC11B-0014 (Tex. Bus. Ct. Mar. 5, 2025)..........................................25

*Energy Transfer LP v. Culberson Midstream LLC*,
No. 24-BC01B-0005, 2024 WL 5320611 (Tex. Bus. Ct. Oct. 30,
2024) ...........................................................................................................14, 32

*In re ETC Field Services, LLC*,
--- S.W.3d ----, No. 15-24-00131-CV, 2025 WL 582320 (Tex.
App.—15th Dist., Feb. 21, 2025) (orig. proceeding) ................................*passim*

*Fain v. State*,
986 S.W.2d 666 (Tex. App.—Austin 1998, pet. ref'd) ........................30, 31, 32

*In re Geomet Recycling LLC*,
578 S.W.3d 82 (Tex. 2019)..............................................................................20

*Gym-N-I Playgrounds, Inc. v. Snider*,
220 S.W.3d 905 (Tex. 2007) ...........................................................................17

*Hirad v. State*,
14 S.W.3d 351 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)............28, 29

*Hogan v. Zoanni*,
627 S.W.3d 163 (Tex. 2021) ................................................................21

*In re J.B.W.*,
99 S.W.3d 218 (Tex. App.—Fort Worth 2003, pet. denied) .............................32

*Jorrie v. Charles*,
No. 24-BC04B-0001, 2024 WL 5337409 (Tex. Bus. Ct. Nov. 7,
2024) .........................................................................................14, 22, 23

*Kendall Builders, Inc. v. Chesson*,
149 S.W.3d 796 (Tex. App.—Austin 2004, pet. denied) .................................17

*Leininger v. Leininger*,
705 F.2d 727 (5th Cir.1983) ...............................................................32

*Lirette v. N.L. Sperry Sun Inc.*,
820 F.2d 116 (5th Cir.1987) (en banc) ...................................................32

*Malouf v. State*
*ex rels. Ellis,* 694 S.W.3d 712 (Tex. 2024) ..........................................26

*Ex parte Moss*,
446 S.W.3d 786 (Tex. Crim. App. 2014) ..................................................29

*Nolan v. Boeing Co.*,
919 F.2d 1058 (5th Cir. 1990) ............................................................32

*Powell v. State*,
897 S.W.2d 307 (Tex. Crim. App. 1994), *overruled by Prystash*, 3
S.W.3d 522.............................................................................28

*Prystash v. State*,
3 S.W.3d 522 (Tex. Crim. App. 1999) ................................................28, 29

*Shields Ltd. P'ship v. Bradberry*,
526 S.W.3d 471 (Tex. 2017) ..............................................................17

*Tema Oil & Gas Co. v. ETC Field Servs., LLC*,
No. 24-BC08B-0001, 2024 WL 5337411 (Tex. Bus. Ct. Nov. 6,
2024) .........................................................................................14

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ..............................................................11

*In re Tex. Educ. Agency*,
619 S.W.3d 679 (Tex. 2021) ..............................................................20

*In re Tex. Educ. Agency*,
619 S.W.3d at 687–88..............................................................21

*Tex. Mut. Ins. Co. v. Chicas*,
    593 S.W.3d 284 (Tex. 2019) ........................................................21, 23, 33

*Tiscareno v. State*,
    608 S.W.3d 434 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) .................29

*In re United Services Auto. Ass'n*,
    307 S.W.3d 299 (Tex. 2010) ......................................................20, 21

*In re Westdale Asset Mgmt., Ltd.*,
    No. 15-24-00135-CV, 2025 WL 300912 (Tex. App.—Austin [15th
    Dist.] Jan. 24, 2025) (mem. op.) ....................................................3, 4

*Wood Motor Co. v. Nebel*,
    238 S.W.2d 181 (1951) ................................................................17

*Xitronix Corp. v. KLA-Tencor Corp.*,
    916 F.3d 429 (5th Cir. 2019) ........................................................16

*Young v. Valt.X Holdings, Inc.*,
    336 S.W.3d 258 (Tex. App.—Austin 2010, pet. dism'd) ...............................18

**Rules and Statutes**

TEX. CIV. PRAC. & REM. CODE § 15.020................................................17

TEX. CIV. PRAC. & REM. CODE § 38.001.............................................26, 27

TEX. GOV. CODE § 25A.001 .............................................................6

TEX. GOV. CODE § 25A.004 .......................................................*passim*

TEX. GOV. CODE § 25A.006 ............................................................18

TEX. R. APP. P. 29.5 .................................................................35

TEX. R. CIV. P. 11 ...........................................................6, 7, 15, 27

**Other Authorities**

Act of June 9, 2023, 88th Leg., R.S., H.B. 19 (2023) .......................*passim*

2021 Tex. Sess. Law Serv. Ch. 665 (H.B. 1578, § 2).................................26

| | |
|---|---|
| *Nature of the case* | Plaintiff/Joint Appellant Lone Star NGL Product Services LLC ("Lone Star") and Defendants/Joint Appellants EagleClaw Midstream Ventures LLC and CR Permian Processing, LLC (collectively, "EagleClaw") agree that the Eleventh Division of the Texas Business Court (the "Trial Court") erred when it ordered this case to be remanded to the 61st Judicial District Court of Harris County, Texas.<br><br>The Trial Court incorrectly determined that the uncodified Section 8 of H.B. 19[1] creates an unwaivable, unmodifiable subject-matter jurisdiction bar to the Business Court's ability to decide this lawsuit. Nothing in H.B. 19 states that Section 8's timing provision affects the Business Court's subject-matter jurisdiction. Instead, the Texas Legislature codified the Business Court's subject-matter jurisdiction requirements in a different section of H.B. 19. Texas case law makes clear that statutory timing provisions do not create subject-matter jurisdiction bars. |
| *Trial court* | Texas Business Court, 11th Division, Hon. Sofia Adrogué |
| *Course of proceedings* | Lone Star sued EagleClaw on May 20, 2021, in Harris County District Court. 1CR111. The lawsuit was assigned to the 61st Judicial District Court, where the matter has been litigated since 2021. 1CR111.<br><br>On September 13, 2024, Lone Star and EagleClaw entered into a "Subsequent Agreement" as expressly authorized by statute agreeing to litigate in the Business Court pursuant to Section 25A.004 of the Texas Government Code. 1CR40–46. On September 17, 2024, the parties filed the Subsequent Agreement pursuant to Texas Rule of Civil Procedure 11 (1CR27), and then filed a joint notice of removal to the Eleventh Division of the Texas Business Court, effectuating the Subsequent Agreement. 1CR17. |

---

[1] "H.B. 19" refers to Tex. H.B. 19, 88th Leg., R.S. (2023).

The Trial Court signed an order on December 20, 2024, remanding the case because of lack of subject-matter jurisdiction. The Trial Court then stayed its remand order and certified its opinion for permissive interlocutory appeal (1CR147), which appeal petition this Court accepted on January 23, 2025. January 23, 2025 Order, on file herein.

296778321

## STATEMENT REGARDING ORAL ARGUMENT

Lone Star requests oral argument, which will assist this Court in addressing multiple grounds demonstrating the Trial Court erred in determining that it lacked subject-matter jurisdiction despite the parties' agreed removal effected pursuant to a subsequent agreement entered after September 1, 2024.

296778321

## ISSUE PRESENTED

This case presents a single issue, which the Trial Court identified in its remand order as meeting the standard for an immediate permissive appeal under Section 51.014(d) of the Texas Civil Practice and Remedies Code:

> Whether a civil action that was commenced before September 1, 2024, may be removed to Business Court where the parties entered into a subsequent agreement after September 1, 2024, expressly consenting to the jurisdiction of the Business Court.

1CR146, ¶ 28.

The Business Court was created in 2023 pursuant to H.B. 19.  Act of June 9, 2023, 88th Leg., R.S., H.B. 19 (2023).  Section 8 of H.B. 19 states: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." *Id.* at § 8.[2]  The single issue before this Court focuses on whether the parties' September 13, 2024 Agreement (the "Subsequent Agreement") allows the parties to remove the Lone Star-EagleClaw lawsuit to the Business Court.  *See* 1CR40–46.

This Court recently has resolved two mandamus petitions involving opposed removals.  *See In re ETC Field Services, LLC*, --- S.W.3d ----, No. 15-24-00131-CV, 2025 WL 582320, at *1 (Tex. App.—15th Dist., Feb. 21, 2025) (orig. proceeding); *In re Westdale Asset Mgmt., Ltd.*, No. 15-24-00135-CV, 2025 WL 300912, at *1 (Tex. App.—Austin [15th Dist.] Jan. 24, 2025) (mem. op.).  But unlike the circumstances addressed in prior removability decisions by this Court and the Business Court trial judges, the parties here have never disputed the removability of this pre-September 2024 case.  The parties here ***agreed*** to remove this case to Business Court; they did so after September 1, 2024; and they filed all necessary pleadings to accomplish removal.

---

[2] Sections 1–3 of H.B. 19 are codified in the Texas Government Code and will be cited to reflect the section number of H.B. 19 and the corresponding Government Code citation.  Sections 4–9 of H.B. 19 are uncodified and will be cited solely by reference to their position within H.B. 19.

Based on Lone Star's review of this Court's docket, this dispute is the only pending appeal where the parties expressly agreed that the Business Court would adjudicate their dispute prior to removing their dispute to Business Court. It is also the only pending appeal where the parties jointly removed a matter to Business Court. Accordingly, this case presents an issue of first impression for this Court.

The following facts will put this issue of first impression in context.

### STATEMENT OF FACTS

**I.     EagleClaw and Lone Star Enter Into Contracts Where EagleClaw Agrees to Sell Its First-Processed Y-Grade Natural Gas Liquids to Lone Star.**

This litigation arises from EagleClaw's breach of two contracts with Lone Star, under which EagleClaw is obligated to sell to Lone Star all of the Y-Grade natural gas liquids ("Y-Grade") that result from the first 840 million cubic feet per day of gas processed by EagleClaw in and around Reeves County, Texas. *See* 1CR26; 1CR111. Lone Star has paid more than $100 million for Y-Grade sold by EagleClaw under the contracts, which were entered in 2016 and expire in 2026. *Id.*

**II.    Lone Star Sues EagleClaw.**

Lone Star sued EagleClaw in the 61st Judicial District Court in 2021 after EagleClaw refused to provide Y-Grade production information that Lone Star is entitled to obtain under the contracts' audit provisions. 1CR26, 111. Discovery revealed that EagleClaw has been diverting Y-Grade that should have been dedicated to Lone Star since 2020 and sending those dedicated liquids to other

purchasers. *See* 1CR4–16. Lone Star amended its petition to allege breach of contract, fraud, and various other torts related to EagleClaw's failures to deliver Y-Grade to Lone Star. 1CR26. Lone Star's actual damages from EagleClaw's diversion scheme exceed $300 million. 1CR33–34.

**III. Lone Star and EagleClaw Sign the September 13, 2024 Subsequent Agreement, Which Reflects Their Agreement to Litigate in Business Court.**

To accomplish their agreed goal of conducting this litigation in the Business Court, Lone Star and EagleClaw entered into the Subsequent Agreement dated September 13, 2024 (1CR40–46) as expressly authorized by Texas Government Code Section 25A.004(d)(2).

The Subsequent Agreement provides that the parties "agree that the Current Lawsuit . . . is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code." 1CR41. Chapter 25A sets forth the Business Court's subject-matter jurisdiction as it relates to large commercial disputes like this matter. *See* H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004).

Under Section 25A.004(d), the Business Court has "civil jurisdiction concurrent with district courts" in matters "in which the amount in controversy exceeds $10 million" and that (1) "aris[e] out of a qualified transaction," or (2) "arise[] out of a contract or commercial transaction in which the parties . . . agreed in the contract or a subsequent agreement that the business court has

296778321                                          5

jurisdiction . . . ." TEX. GOV. CODE § 25A.004(d). All three requisites for Business Court jurisdiction are satisfied based on this record.

The parties agree that the amount in controversy exceeds $10 million. 1CR33–34. Lone Star alleges hundreds of millions of dollars in damages. *Id.*

The parties also agree that this dispute arises out of a "qualified transaction." *Id.* Subject to certain exceptions that do not apply to this case, a "qualified transaction" is a transaction where a party "pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million." *See* H.B. 19, § 1 (codified at TEX. GOV. CODE §§ 25A.001(14), 25A.004(d)(1)). It is undisputed that the agreements between EagleClaw and Lone Star satisfy the definition of "qualified transaction." 1CR33.

Finally, the parties' Subsequent Agreement is a contractual agreement to submit the parties' dispute to the Business Court pursuant to Section 25A.004(d)(2). The Subsequent Agreement expressly states that it "is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a 'subsequent agreement that the business court has jurisdiction over the action.'" 1CR41. The Subsequent Agreement's purpose "is to allow the Current Lawsuit to become removable to the Texas Business Court." *Id.* In the parties' removal briefing, the parties also agreed that the Subsequent Agreement satisfies the requirements of Section 25A.004(d)(2). *See* 1CR28–29.

In addition to its provisions reflecting an agreement to litigate the dispute in the Business Court, the Subsequent Agreement includes several other provisions to ensure that the parties' intent to litigate in the Business Court will not be thwarted. 1CR40–46.  For example, the Subsequent Agreement includes a tolling agreement and the express approval of both parties allowing the lawsuit to be non-suited without prejudice and refiled in the Business Court in the event the case is remanded. 1CR45.

## IV. Based on the Subsequent Agreement, the Parties Jointly Removed the Case to Business Court and Responded to Subject-Matter Jurisdiction Inquiries Raised by the Trial Court.

Lone Star filed the Subsequent Agreement with the 61st Judicial District Court and the Trial Court on September 17, 2024.  1CR27.  Pursuant to Texas Rule of Civil Procedure 11, Lone Star filed the Joint Notice of Removal that same day. 1CR17–21.

On September 26, 2024, the Trial Court ordered the parties to submit briefing regarding the propriety of removal and the Trial Court's subject-matter jurisdiction. 1CR23–24.  The parties submitted their Joint Brief in Support of Removal to Business Court on October 16, 2024.  1CR25–37.  The Trial Court then requested further briefing (1CR115), and Lone Star submitted its Additional Brief in Support of Removal to Business Court on November 4, 2024.  1CR97–107.

The Trial Court held a hearing on November 12, 2024. 1RR1. At the hearing, the Trial Court asked questions regarding numerous topics, including the text of H.B. 19; Chapter 25A's subject-matter jurisdiction provision; the meaning of Section 8 of H.B. 19; the parties' Subsequent Agreement; the status of other Business Court remand orders; and the legislative policy reflected in the enactment of H.B. 19. 1RR19–57 The Trial Court also noted that, in advance of the hearing, she had prepared questions, gathered questions from clerks and interns, and conferred with the other Business Court trial judges. 1RR6:15–20; 1RR42:9–15. The Trial Court stated that the Business Court's goal was to "create horizontal res judicata" across each of its divisions. 1RR47:14–22.

On December 20, 2024, the Trial Court issued an order remanding the case to the 61st District Court (the "Order"). 1CR109–127. The Order focused on the original filing date of the lawsuit (*see id.* at ¶ 2), giving no effect to the parties' Subsequent Agreement under Section 25A.004(d)(2) (*id.* at ¶ 4). Relying on numerous secondary sources (*e.g., id.* at ¶¶ 2 n.6, 3 n.12, 13 n.27, 18 n.37) and other Business Court decisions (*e.g., id.* at ¶¶ 14, 17 nn.34–35, 18 n.38), the Trial Court rejected the parties' arguments that the Subsequent Agreement authorized the Business Court to hear the dispute.

The Order does not dispute that this case satisfies all requirements of Section 25A.004(d). *Id.* at ¶ 4. However, the Trial Court determined that Section 8's

296778321

8

September 1, 2024 timing provision "operates as a jurisdictional provision" that precludes enforcement of the parties' September 13, 2024 Subsequent Agreement and thereby forecloses removal. *Id.* at ¶ 23.

Aside from the Trial Court's ruling regarding H.B. 19's timing provision in Section 8, which it treated as a limit on subject-matter jurisdiction, the Trial Court recognized the effectiveness of the parties' September 13, 2024 Subsequent Agreement. *See id.* at ¶ 9.

The Trial Court recognized that the Subsequent Agreement requires the parties to non-suit their case in the 61st District Court and refile in the Business Court in the event of a remand.. *Id.* ("Because the Parties have agreed to non-suit and refile this case in the event of a remand, ***remanding this case will not keep the dispute out of the Business Court***.") (emphasis added). Thus, the Trial Court acknowledged that the parties' Subsequent Agreement, coupled with the amount in controversy in the action, is sufficient to confer subject-matter jurisdiction on the Business Court. *Id.*

The parties also noted, and the Trial Court acknowledged, that "remand will cause significant difficulties in the discovery process and increase costs for all Parties." *Id.* (citing 1CR29–31).

**V. The Trial Court Stays Its Remand Order and Certifies a Permissive Appeal; This Court Accepts the Permissive Appeal.**

The Trial Court stayed the remand order and granted the parties' request for a permissive interlocutory appeal. 1CR127.

On January 6, 2025, the parties filed their Joint Petition for Permissive Appeal. On January 23, 2025, this Court granted the parties' petition and accepted the appeal.

## STANDARD OF REVIEW

Determining the existence of subject-matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). This Court reviews de novo a trial court's determination of questions of law. *Carter v. Harris Cnty. Appraisal Dist.*, 409 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Because the issue of whether a trial court has subject-matter jurisdiction is a question of law, we review de novo a trial court's ruling on a motion to dismiss for lack of jurisdiction.").

The remand order is erroneous because Section 8 of H.B. 19 does not foreclose access to the Business Court when the parties have signed a Subsequent Agreement after September 1, 2024, in which they expressly invoke that court's subject-matter jurisdiction in a complex, high-dollar commercial dispute that plainly belongs in Business Court. This is so for multiple reasons.

*First*, the parties' September 13, 2024 Subsequent Agreement authorizes the Business Court to exercise subject-matter jurisdiction over a complex commercial dispute with more than $10 million at issue. *Second*, H.B. 19's unambiguous language demonstrates that Section 8's timing provision places no limit on the Business Court's subject-matter jurisdiction. *Third*, Texas case law and language used in other statutes confirm that Section 8 does not create a subject-matter jurisdiction bar to removal in this case. *Fourth*, the remand order erred in its analysis of Section 5, which is the section of H.B. 19 that actually creates the Business Court. *Fifth*, remand frustrates the legislative intent underlying H.B. 19 in a situation in which the Trial Court agrees the dispute will eventually be heard by the Business Court. Individually and in concert, these reasons show that the remand order should be reversed. This Court should enforce the September 13, 2024 Subsequent Agreement and allow this case to proceed in Business Court.

**ARGUMENT**

This Court's removability analysis necessarily occurs against the backdrop of the purposes for which the Business Court was created.

Those purposes fully support recognizing the effectiveness of a removal that has been undertaken (1) via a September 13, 2024 Subsequent Agreement made in conformity with Section 25A.004(d)(2); and (2) by sophisticated contracting parties acting jointly to unlock the Business Court's promised efficiencies in the handling of their complex, high-dollar commercial dispute. A parsimonious approach to removal authority under the circumstances in this case, when no subject-matter jurisdiction obstacle is presented by Section 8 of H.B. 19, would thwart the goals underlying creation of the Business Court.

The 88th Legislature created the Business Court as a "specialty trial court" (H.B. 19, § 7) designed to hear large corporate governance disputes involving closely-held entities (H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004(b))), corporate governance disputes of any size involving publicly-traded entities (*id.* at § 25A.004(c)), and large commercial disputes. *Id.* at § 25A.004(d).

This case indisputably satisfies the criteria necessary for subject-matter jurisdiction in the Business Court because the amount in controversy exceeds $10 million (1CR33–34), the relevant agreements are "qualified transactions" (1CR33), and the parties agreed in the Subsequent Agreement to have the dispute heard by the

Business Court. 1CR40–46. These are the ***only*** subject-matter jurisdiction requirements set forth in Chapter 25A. *See* H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004(d)) (delineating the Business Court's subject-matter jurisdiction over large commercial disputes). The Trial Court recognized that remand presents, at most, a timing issue. 1CR116, ¶ 9 ("[R]emanding this case will not keep the dispute out of the Business Court.").[3] There is no subject-matter jurisdiction obstacle to litigating in Business Court under the circumstances of this case.

One additional point bears mentioning at the argument's outset: Clarity of terminology goes a long way towards answering the issue presented. As discussed below, the analysis can become muddled by use of the imprecise term "jurisdictional"[4]—and by varied descriptions of Section 8's timing provision.[5] Regardless of whether Section 8 is described as an "effective date" or something else, Section 8 is not "jurisdictional" in the sense of creating a limit on the Business Court's subject-matter jurisdiction. The parties addressed Section 8's timing

---

[3] As discussed below, remanding the case only to require the parties to dismiss the case without prejudice and re-file anew in the Business Court would work substantial inefficiencies, requiring the Court to rule on issues that have already arisen and requiring the parties to waste needless time and resources on new pleadings, new discovery, and new motion practice.

[4] *See infra* at pp. 20–25, 32–33.

[5] The various Business Court divisions have not agreed on how to characterize Section 8. *See Energy Transfer LP*, 2024 WL 5320611, at *2 (calling Section 8 an "enabling provision"); *Tema Oil & Gas Co. v. ETC Field Servs., LLC*, No. 24-BC08B-0001, 2024 WL 5337411, at *3 (Tex. Bus. Ct. Nov. 6, 2024) (calling Section 8 "H.B. 19's applicability clause"); *Jorrie*, 2024 WL 5337409, at *2 (calling Section 8 a "commencement date"); 1CR123, ¶ 23 (calling Section 8 an "effective date" provision). This Court has described the September 1, 2024 date referenced in Section 8 as an "effective date." *See In re ETC Field Services, LLC*, 2025 WL 582320, at *2.

provision in their September 13, 2024 Subsequent Agreement,[6] and that agreement is fully enforceable to allow removal to the Business Court.

## I. The Trial Court Erred by Giving no Effect to the September 13, 2024 Subsequent Agreement and Section 25A.004(d)(2).

The remand order gives no effect to the parties' September 13, 2024 Subsequent Agreement by which the parties agreed to proceed in the Business Court as permitted by Section 1 of H.B. 19. *See* 1CR114, ¶ 4 (stating that "the Parties ascribe outsize meaning to the timing of their Rule 11 Agreement"). The remand order likewise gives no effect to Section 25A.004(d)(2).

The parties entered into the Subsequent Agreement on September 13, 2024—after the Business Court began accepting cases. *See* H.B. 19, §§ 1, 5, 8. The date of the parties' Subsequent Agreement is important, as is H.B. 19's express authorization for parties to confer jurisdiction on the Business Court by agreement.

---

[6] In the September 13, 2024 Subsequent Agreement, the parties agreed:

- That "the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court,"

- That the "Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action,"

- That they agreed to "waive any challenge to the jurisdiction of the Texas Business Court to hear and adjudicate the claims and causes of action asserted in the Current Lawsuit," and

- That they "intend that this Agreement—executed after September 1, 2024—is to allow the Current Lawsuit to become removable to the Texas Business Court."

1CR41.

Unlike the federal regime of limited Article III jurisdiction,[7] H.B. 19 expressly authorizes litigants, subject to certain exceptions not applicable here, to agree to jurisdiction in the Business Court in a case in which the amount in controversy exceeds $10 million. Section 1 of H.B. 19 is codified in Section 25A.004(d)(2) of the Texas Government Code, which allows litigants to agree to jurisdiction in the Business Court. H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004(d)(2)) (granting the Business Court "civil jurisdiction concurrent with district courts" to adjudicate any action that "arises out of a contract or commercial transaction in which the parties to the contract or transaction agreed in the contract or a subsequent agreement that the business court has jurisdiction of the action").

The Trial Court characterizes the parties' negotiation and drafting of the Subsequent Agreement throughout the Order. *See, e.g.*, 1CR117, ¶ 11 (calling the Subsequent Agreement an "elaborate strategy"); 1CR121, ¶ 19 (describing the parties' arguments as "innovative"). The Trial Court's Order, though, overlooks Texas' long-standing public policy supporting the freedom of sophisticated parties—like Lone Star and EagleClaw—to enter into "elaborate" and "innovative" agreements if they so choose.

---

[7] "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 435 (5th Cir. 2019) (internal quotation marks omitted). Accordingly, because a federal court's subject-matter jurisdiction arises only "from the nature and limits of the judicial power of the United States," a federal court's subject matter jurisdiction is considered "inflexible and without exception." *Xitronix Corp.*, 916 F.3d at 435.

In enacting H.B. 19, the Legislature tapped into Texas' paramount public policy favoring freedom of contract:

> [C]ompetent parties shall have the utmost liberty of contract, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. This paramount public policy mandates that courts are not lightly to interfere with this freedom of contract. Absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered.

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017) (quotations and footnotes omitted); *see also Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) (public policy requires courts to allow parties "the utmost liberty of contracting" so that contracts "entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice"); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex. 2005) ("Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.") (quoting *Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (1951)).

H.B. 19 requires enforcement of a "subsequent agreement" just as Texas public policy favors enforcing any other contractual agreement. To that end, Business Court jurisdiction under Section 25A.004(d)(2) looks more like the enforcement of a venue-selection clause, forum-selection provision, or arbitration agreement. *Cf.* TEX. CIV. PRAC. & REM. CODE § 15.020 (enforcing venue-selection clauses in "major transactions"); *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796,

803 (Tex. App.—Austin 2004, pet. denied) ("Texas courts rigorously enforce valid arbitration agreements . . . ."); *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 262 (Tex. App.—Austin 2010, pet. dism'd) ("Under federal and Texas law, forum-selection clauses are prima facie valid."). This approach dovetails with this Court's recent recognition of the jurisprudential benefits parties expect to capture by agreeing to jurisdiction in the specialized forum now available via the Business Court. *See In re ETC Field Services, LLC*, 2025 WL 582320, at *4 (recognizing the Business Court is a "specialized" trial court designed to create "a consistent, uniform, and predictable body of corporate and business law").

By empowering parties to agree to jurisdiction in the Business Court, the Legislature's clear intent is to allow parties to agree to jurisdiction in the Business Court at any time after September 1, 2024. *See* H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004(d)(2)). The Legislature allowed parties to agree——as Lone Star and EagleClaw did here—to create jurisdiction in the Business Court as long as the dispute involves an amount in controversy of at least $10 million. H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.006(f)) ("A party may file an agreed notice of removal ***at any time during the pendency of the action***.") (emphasis added); H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004(d)).

Here, the Subsequent Agreement—entered ***after*** the Business Court's creation and after the September 1, 2024 date set forth in Section 8—conferred authority on

the Trial Court to adjudicate the parties' dispute. The Trial Court erred when it refused to enforce the parties' Subsequent Agreement.

## II. H.B. 19's Timing Provision Does Not Limit the Texas Business Court's Subject-Matter Jurisdiction.

The Trial Court erred when it treated Section 8's timing provision as a limit on subject-matter jurisdiction operating in the same manner as subject-matter limits established in Section 1. *See* 1CR123, ¶ 23 ("The Court finds that Section 8 of H.B. 19 unambiguously operates as a jurisdictional provision when applied to Texas Government Code Section 25A.004."). Contrary to the Trial Court's Order, H.B. 19's unambiguous language makes clear that Section 8 does not limit subject-matter jurisdiction. Because Section 8's timing provision is not a limit on subject-matter jurisdiction, Lone Star and EagleClaw were free to agree that the Business Court can hear this prototypical Business Court case—as they did in their September 13, 2024 Subsequent Agreement.

H.B. 19 consists of nine sections. Section 1 sets forth the Texas Business Court's subject-matter jurisdiction. *See* H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004). Section 1 sets forth numerous limitations on the Texas Business Court's subject-matter jurisdiction governing civil cases like the present dispute. *Id.* (amending Texas Government Code § 25A.004(d) to create concurrent subject–matter jurisdiction in the Texas Business Court for disputes where the amount in controversy exceeds $10 million that arise out of qualified transactions or where

296778321                                    19

parties have agreed in the contract "or a subsequent agreement" that the court has subject-matter jurisdiction).

No other section of H.B. 19 discusses the Texas Business Court's subject-matter jurisdiction. Consistent with statutory construction principles, H.B. 19 should be applied by "constru[ing] the Legislature's chosen words and phrases within the context and framework of the statute as a whole, not in isolation." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021). It is long-settled Texas law that "[e]very word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be give effect if reasonably possible." *Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (Tex. 1957). It is not the Court's place to "judicially amend the statute" or "engraft upon the statute any conditions or provisions not placed there by the legislature." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 87 (Tex. 2019).

Case law provides additional guidance for addressing the legally slippery term "jurisdictional"—especially when this polysemous word is used to analyze statutory timing provisions. As both the United States Supreme Court and the Texas Supreme Court have recognized, "intemperate use of the term 'jurisdictional' has caused problems." *In re United Services Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (noting that

"jurisdiction" is a word of "too many" meanings and that "[t]his Court, no less than other courts, has sometimes been profligate in its use of the term").

In keeping with its recognition that the label "jurisdictional" has been used imprecisely in the case law, the Texas Supreme Court has directed that Courts should be "reluctant to conclude that a provision is jurisdictional, absent clear legislative intent to that effect." *In re United Services Auto. Ass'n*, 307 S.W.3d at 306. Instead, Texas courts are to presume the legislature did ***not*** intend a statute to affect a court's subject-matter jurisdiction. *Tex. Mut. Ins. Co. v. Chicas*, 593 S.W.3d 284, 287 (Tex. 2019). And that presumption "can only be overcome with clear contrary legislative intent." *Id.*

Applying settled statutory construction principles here means that the ***inclusion*** of the word "jurisdiction" in Section 1 was deliberate. *Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021). It also means the ***omission*** of a subject-matter jurisdiction limitation from Section 8's timing provision is deliberate. *In re Tex. Educ. Agency*, 619 S.W.3d at 687–88 ("We presume the Legislature knows the law and drafts statutes with care, choosing each word for a purpose and purposefully omitting all other words."); *see also Hogan*, 627 S.W.3d at 169 (recognizing that the Legislature "likewise excluded language deliberately and purposefully"); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[W]e believe every

word excluded from a statute must also be presumed to have been excluded for a purpose.").

The result of this analysis is straightforward: Section 1 establishes limits on subject-matter jurisdiction; Section 8 does not. Therefore, the September 13, 2024 Subsequent Agreement is effective to allow this case to proceed in Business Court pursuant to Section 25A.004(d)(2).

The Trial Court's reasoning to support its determination that Section 8 "operates as a jurisdictional provision" foreclosing removal rests largely on two sentences contained in paragraph 23 of the Order.[8] *See* 1CR123, ¶ 23. Those two sentences are supported by a single citation in footnote 47 to another Business Court division's decision and a *supra* cite to the Trial Court's own remand order. *Id.* at n.47 (citing heading A.i of the Trial Court's Order and *Jorrie v. Charles*, No. 24-BC04B-0001, 2024 WL 5337409, at *3 (Tex. Bus. Ct. Nov. 7, 2024)).

*Jorrie* provides no persuasive support for the Trial Court's determination because *Jorrie* determines in conclusory fashion that Section 8 affects the Business Court's subject-matter jurisdiction without analysis or citation to supporting authority. *Jorrie*, 2024 WL 5337409, at *3 ("The court concludes that Section 8 is jurisdictional.").

---

[8] The decisions cited in footnote 39 of the Trial Court's Order are inapposite, as they each involved instances where a party unilaterally removed a preexisting case to the Business Court. *See* 1CR121, ¶ 18 n.39.

*Jorrie*'s analysis failed to acknowledge the presumption that Section 8 does not affect subject-matter jurisdiction. *Compare id.*, *with Chicas*, 593 S.W.3d at 287. Nor did *Jorrie* analyze whether "clear contrary legislative intent" supports determining that Section 8 affects subject-matter jurisdiction. *Compare Jorrie*, 2024 WL 5337409, at *3, *with Chicas*, 593 S.W.3d at 287.

And, crucially, the court in *Jorrie* was not considering the situation here—in which the parties jointly removed a dispute satisfying H.B. 19's requisites pursuant to a Subsequent Agreement entered on September 13, 2024, in conformity with Section 25A.004(d)(2). Instead, *Jorrie* involved a unilateral removal; only after the matter was already in the Business Court did the other side "consent[] to removal." *Id.* at *1. *Jorrie* did not consider issues of waiver, invited error, or estoppel. Nor did *Jorrie* analyze the fact that the subject–matter jurisdiction provisions in H.B. 19 are expressly limited by the Legislature to Section 1. Instead, *Jorrie* simply concluded that "Section 8 is jurisdictional" (*id.* at *3), which the Trial Court relied on in its Order. The parties did not appeal the court's ruling in *Jorrie*.

The Trial Court erred in relying on *Jorrie*'s unsupported determination that "Section 8 is jurisdictional." The Trial Court's determination is contrary to the unambiguous language employed by the Legislature in drafting H.B. 19. The Legislature separately codified the Business Court's subject-matter jurisdiction limits in Section 1 of H.B. 19.

Indeed, when this Court recently interpreted the date set forth in Section 8, it held simply that the language in Section 8 means what it says—and nothing more. *See In re ETC Field Servs., LLC*, 2025 WL 582320, at \*2–3. This Court made no determination that Section 8's timing provision limits the Business Court's subject-matter jurisdiction. *Id.* This Court did not hold that Section 8's timing provision is "unwaivable," or that Section 8 somehow trumps the parties' ability to establish Business Court jurisdiction pursuant to a subsequent agreement under Section 25A.004(d)(2). H.B. 19, § 1 (codified at TEX. GOV. CODE § 25A.004(d)(2)). Nor did this Court hold that an agreement like Lone Star and EagleClaw's September 13, 2024 Subsequent Agreement is ineffective to satisfy, modify, or waive Section 8's timing provision.[9]

Here is the bottom line. The parties' dispute satisfies all of Section 25A.004's requisites for subject-matter jurisdiction in the Business Court. The parties' September 13, 2024 Subsequent Agreement satisfies Section 25A.004(d)(2) and allows removal. Section 8 of H.B. 19 does not preclude removal because that timing provision does not limit the Business Court's subject-matter jurisdiction or its ability

---

[9] *In re ETC Field Services, LLC* involved an opposed removal to the Business Court. 2025 WL 582320, at \*1. Accordingly, *ETC Field Services* presents a different issue than that raised here and does not require remand in this case, where the parties executed the Subsequent Agreement agreeing to joint removal to the Business Court.

24

to enforce a removal agreement entered on September 13, 2024.[10]  Therefore, this Court should give effect to the Subsequent Agreement; give effect to Section 25A.004(d)(2); and reverse the Trial Court's remand order predicated on an erroneous determination that Section 8 is "jurisdictional."

## III. Additional Authorities Confirm that Section 8 Does Not Limit Subject-Matter Jurisdiction.

### A. Section 8 Is More Limited Than Other Timing Provisions.

The entirety of Section 8 is a single sentence stating, "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." H.B. 19, § 8.  Section 8 contains no discussion of what law applies to cases already pending on September 1, 2024.  Nor does Section 8 contain any limiting language that states Section 8 applies *only* to post-September 1, 2024 actions.  These are crucial and intentional omissions that differ from other statutes containing timing provisions passed by the legislature.

In analyzing the exclusion of the word "only," this Court already has noted that Section 8's timing provision cannot be rendered meaningless.  *In re ETC Field Services, LLC*, 2025 WL 582320 at *3 ("We cannot construe this effective date to

---

[10] Energy Transfer GC NGL Product Services LLC has filed a separate lawsuit that relates to some of the factual allegations made in this case.  *See* Plaintiff Energy Transfer GC NGL Product Services LLC's Original Petition, *Energy Transfer GC NGL Prod. Servs., LLC v. Jamie Welch, et al.*, No. 25-BC11B-0014 (Tex. Bus. Ct. Mar. 5, 2025).  That lawsuit is brought against different entities than the ones participating in this case.  *See id.* at ¶¶ 1–11.  The subsequent lawsuit separately satisfies the subject-matter jurisdictional prerequisites of the Business Court.  *See id.* at ¶¶ 12–19.

effectively eliminate any effective date."). In so doing, this Court held that Section 8's timing provision means precisely what it says.

Section 8's timing provision is a narrower proscription than has been used in other contexts. For example, Section 38.001 of the Civil Practice & Remedies Code was amended in 2021 to make clear that Chapter 38 applies to individuals and to more broadly defined "organizations." *See* 2021 Tex. Sess. Law Serv. Ch. 665, (H.B. 1578, § 2)) (amending Tex. Civ. Prac. & Rem. Code § 38.001). Prior to H.B. 1578's passage, Chapter 38 applied only to individuals and corporations. *Id.* The 87th Texas Legislature made clear that the amendment was enforceable only on a prospective basis—using explicit language that does not appear in H.B. 19:

| House Bill 19, Section 8 | 2021 Tex. Sess. Law Serv. Ch. 665, (H.B. 1578, § 2)) |
|---|---|
| The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024. | The change in law made by this Act applies **only** to an award of attorney's fees in an action commenced on or after the effective date of this Act. ***An award of attorney's fees in an action commenced before the effective date of this Act is governed by the law applicable to the award immediately before the effective date of this Act, and that law is continued in effect for that purpose.*** |

The difference in timing provisions between H.B. 19 and H.B. 1578 cannot be ignored. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 727 (Tex. 2024) ("[W]e generally presume the Legislature uses the same word consistently

throughout a statute and uses different words to convey different meanings."). Thus, because H.B. 1578 presents a more explicit timing limit than H.B. 19 does, it makes no sense to determine that H.B. 19 creates an unwaivable subject-matter jurisdiction limitation. If Section 8 of H.B. 19 creates an unwaivable subject-matter jurisdiction limitation, then what stricter timing limit could the legislature have intended when it authored H.B. 1578?

H.B. 1578 confirms that the Trial Court's subject-matter jurisdiction determination is flawed. Consider a hypothetical in which two LLCs in a case filed before 2021 and still pending when H.B. 1578 was passed agreed that the Court should apply the amended version of Section 38.001 to determine their entitlement to attorney's fees—and additionally waived any argument that the prior iteration of Section 38.001 applied. Further, what if those parties entered into a Rule 11 agreement stipulating to application of the new Section 38.001? *See* TEX. R. CIV. P. 11. If the trial court, relying on the parties' waiver, invitation, and agreement, applied the new Section 38.001 to award fees to one of the LLCs, the other LLC would not be able to assert on appeal that the trial court lacked subject-matter jurisdiction to make its fee award.

The same must be true here. Section 8's timing provision cannot operate as an unwaivable subject-matter jurisdiction bar preventing the parties from agreeing

27

to jointly remove the lawsuit to Business Court where the suit satisfies all of Section 25A.004(d)'s subject-matter jurisdiction requirements.

**B.    *Prystash* Confirms That Section 8 Does Not Limit Subject-Matter Jurisdiction.**

The Trial Court's Order emphasized that subject-matter jurisdiction limits cannot be waived.  *See* 1CR122–23, ¶ 22.  That is, of course, true.  But that misses the point.  That truism does not itself transform Section 8's timing provision into a limitation on the Business Court's subject-matter jurisdiction.

To the contrary, multiple cases hold that statutory effective dates do not create unwaivable subject-matter jurisdiction limitations.  *See Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999); *Powell v. State*, 897 S.W.2d 307, 317 (Tex. Crim. App. 1994), *overruled by Prystash*, 3 S.W.3d 522; *see also Hirad v. State*, 14 S.W.3d 351, 352 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (discussing *Prystash*'s overruling of *Powell*).

At issue in *Powell* was whether a statute's "effective date" could be waived.  The plurality held that a statute's "effective date" was "absolute," "nonforfeitable" and "nonwaivable."  *Powell*, 897 S.W.2d at 317.  Five years later, *Prystash* overruled *Powell*, holding that a party cannot "complain of an action he requested" and relying on the doctrine of invited error to reject *Powell*.  3 S.W.3d at 531 ("Just as the law of entrapment estops the State from making an offense of conduct that it induced,

the law of invited error estops a party from making an appellate error of an action it induced.").

*Prystash*'s invited error holding necessarily means that Section 8's timing provision does not create a subject-matter jurisdiction barrier, even if that timing provision is treated as an "effective date." This is so because even the doctrine of invited error does not apply to questions of subject-matter jurisdiction.[11] *Interest of A.F.*, 653 S.W.3d 730, 745 (Tex. App.—Fort Worth 2019, no pet.) (holding that invited error "cannot create subject-matter jurisdiction where it does not otherwise exist") (citing *In re Crawford & Co.*, 458 S.W.3d 920, 928 n.7 (Tex. 2015)).

Further, in a petition refused opinion, the Fourteenth Court of Appeals relied on *Prystash* to hold that *Powell*'s "effective date" holding had been rejected, because it "ignored the crucial distinction between rules of waiver and invited error." *Hirad*, 14 S.W.3d at 352.

Nothing here makes the analysis of H.B. 19's timing provision different from the analysis in *Prystash* and *Hirad*. That means Section 8's timing provision is not

---

[11] *Prystash* is a decision by the Texas Court of Criminal Appeals and thus not binding authority in these circumstances, but its reasoning applies with full force here. Criminal courts must also have subject-matter jurisdiction to hear a case. *Tiscareno v. State*, 608 S.W.3d 434, 437 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). As in civil cases, subject-matter jurisdiction limits in a criminal case cannot be waived. *Id.* ("A defendant may challenge the trial court's subject-matter jurisdiction for the first time on appeal."). And a conviction entered by a trial court that lacks subject-matter jurisdiction is void. *Ex parte Moss*, 446 S.W.3d 786, 789 (Tex. Crim. App. 2014). *Prystash*'s determination that a statute's effective date can be waived and, thus, is not a limit on subject-matter jurisdiction, is persuasive authority.

"absolute," "nonforfeitable," or "nonwaivable." The Trial Court erred when it determined otherwise.

### C. *Fain* Shows the Legislature's Enactment of H.B. 19 Confers Subject-Matter Jurisdiction on the Texas Business Court.

*Fain v. State* also presents an analogous situation in another petition refused decision. *See* 986 S.W.2d 666 (Tex. App.—Austin 1998, pet. ref'd). There, Fain was charged with murder prior to the enactment of Article 31.09 of the Texas Code of Criminal Procedure, which otherwise would have allowed the district court to continue to hear the case, even when venue had changed to another county. *Id.* at 673. Crucially, Article 31.09 *required consent of the parties and their attorneys*, allowing the parties' agreement to authorize the judge to oversee a dispute outside the county's territorial limits. *Id.*

Key to this dispute, the trial court in *Fain* obtained permission of the parties and employed Article 31.09's venue change procedure nine months before Article 31.09's effective date. *Id.* The Austin Court of Appeals held that the failure to comply with the statutory venue provisions was merely "a procedural error" that did not create a subject–matter jurisdiction defect. *Id.* at 673–74.

Instead, the Austin Court of Appeals emphasized that the mere fact that the Texas Legislature had the *ability* to later enact Article 31.09—even though it was not effective at the time—was sufficient to confer authority on the trial court. *Id.* The court held that the Texas Constitution "requires a district court to conduct its

proceedings in the county seat of the county in which the case is pending, except as otherwise provided by law," and that the trial court conducted the criminal trial "beyond its territorial limits." *Id.* at 673. According to the dissent, that created a subject-matter jurisdiction issue that rendered the trial court's judgment void. *Id.* at 684 (Onion, J. dissenting).

But the majority rejected strict reliance on the statute's ineffectiveness as creating a lack of subject-matter jurisdiction. *Id.* at 673. Instead, the court focused on the Legislature's enactment of Article 31.09 showed that the court had subject-matter jurisdiction to try the case in a different county. *Id.* ("However, article 31.09 now authorizes a district court to effect a valid change of venue by sitting in the county seat of another county; more importantly, article V, section 7 and article III, section 45 gave the legislature the power, long before article 31.09's effective date, to pass laws exempting courts from the county seat requirement.").

The court emphasized the timing issue—that it would make no sense to hold that the court lacked subject-matter jurisdiction "in January but not in September" when "***[a]ll that changed in the interim was that a statutory procedure . . . came into effect***." *Id.* (emphasis added).

The same is true, here. The Legislature had the authority to pass H.B. 19 and create the Business Court at the time Lone Star's petition against EagleClaw was filed. And it is unquestioned that the Subsequent Agreement will be sufficient to

296778321                                      31

authorize subject-matter jurisdiction in the Business Court should the parties need to non-suit and refile. *See* 1CR136, ¶ 9 ("Because the Parties have agreed to non-suit and refile this case in the event of a remand, remanding this case will not keep the dispute out of the Business Court."). All that will have changed in the interim is that H.B. 19 will have gone into effect.

This case raises the same question already answered by *Fain*. *Fain* confirms that the Trial Court erred in remanding the case.

## IV. H.B. 19's Section 8 Is at Most a Procedural Limitation.

As the Trial Court noted in footnote 17 of the Order, "the true effective date provision of H.B. 19 is Section 9," which states, "This Act takes effect September 1, 2023." *See* 1CR135, ¶ 6 n.17.[12] Accordingly, unless otherwise specified, H.B. 19 is a procedural statute that governs all cases from the date on which Section 9 says it becomes effective—September 1, 2023.[13] *In re J.B.W.*, 99 S.W.3d 218, 224 (Tex. App.—Fort Worth 2003, pet. denied) (holding that a remedial and procedural statute "controls all affected proceedings from the date it becomes law"); *see also*

---

[12] *See Energy Transfer LP v. Culberson Midstream LLC*, No. 24-BC01B-0005, 2024 WL 5320611, at *2 (Tex. Bus. Ct. Oct. 30, 2024) ("Based on § 9 alone, Government Code § 25A.006 would appear to allow parties to remove pending cases to this court beginning on September 1, 2023.").

[13] Similarly, federal cases have held that the "time limits" for removal of cases to federal court are "not jurisdictional" but "merely 'modal and formal and may be waived.'" *Nolan v. Boeing Co.*, 919 F.2d 1058, 1064 (5th Cir. 1990) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir.1983)); *see also see also Lirette v. N.L. Sperry Sun Inc.*, 820 F.2d 116, 117 (5th Cir.1987) (en banc) (statutory bar to removal of Jones Act claim is waivable if a litigant does not timely object to removal).

*Ex parte Abell*, 613 S.W.2d 255, 260 (Tex. 1981) ("[N]o litigant has a vested right in a statute or rule which affects remedy or is procedural in nature and which affects no vested substantive right. Changes in such statutes or rules are considered remedial in nature and have been held not to violate the [Texas Constitution].").

While Section 8 provides a limited exception to the "changes in law" contained in Sections 1–3 of H.B. 19,[14] Section 8 does not affect the remainder of H.B. 19. And it is Section 5 of H.B. 19 that provides for unfettered existence of the Texas Business Court, starting on September 1, 2024, regardless of Section 8's timing provision.

As noted above, despite intending to create "horizontal res judicata" across each of its divisions (1RR47:14–22), the various divisions of the Business Court have not agreed on the proper characterization of Section 8. This divergence undercuts any contention that Section 8 reflects a "clear . . . legislative intent" to limit the Business Court's subject-matter jurisdiction. *See Chicas*, 593 S.W.3d at 287. Further, these varying characterizations warrant clarification from this Court.

---

[14] The "changes in law" in H.B. 19 are contained in Sections 1–3. Section 1 amends "Subtitle A, Title 2, Government Code" by "adding Chapter 25A," Section 2 amends "Sections 659.012(a) and (e)" of the Government Code, and Section 3 amends "Section 837.001(a), Government Code . . . ." H.B. 19, §§ 1–3. Sections 4–9 do not change any statute. *Id.* at §§ 4–9.

That clarification should confirm that Section 8 is at most a timing provision that does not affect Section 5's creation of the Business Court or limit the Business Court's subject-matter jurisdiction.

## V. The Remand Order Creates Inefficiency and Thereby Frustrates Legislative Intent.

The unambiguous statutory text of H.B. 19 is sufficient to resolve the issue presented on appeal. But if the Court wishes to consider additional policy arguments or indications of legislative intent, those support the parties' position too.

The Trial Court recognized that the only issue at play is one of timing based on Section 8 of H.B. 19. 1CR116, ¶ 9 ("Because the Parties have agreed to non-suit and refile this case in the event of a remand, remanding this case will not keep the dispute out of the Business Court."). This dispute therefore satisfies the Business Court's subject-matter jurisdiction requirements.

Based on the parties' Subsequent Agreement, which ensures that this dispute will ultimately be adjudicated in the Business Court, the Trial Court appears to have determined that it is necessary to require the matter be non-suited and refiled. 1CR145, ¶ 26 ("[T]he dedication of any further Court resources to this matter (prior to non-suit and refiling) would be, at a minimum, a misallocation."). But the parties' Subsequent Agreement—which expressly envisioned a trial in April of 2025—will

have been frustrated by the delay resulting from the Trial Court's Order.[15] Judicial economy and efficiency certainly will not result.

Texas law does not require such a waste of time and resources. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 650 (Tex. 2009) (Hecht, J. dissenting) (noting that instances where a party can simply refile the same suit, "essentially unaffected," are "a waste of time" and "determin[ing] whether dismissal was required is largely irrelevant"). To the contrary, this Court has already recognized that a key component of the Business Court is the parties' ability to obtain *prompt* resolution of a dispute. *See In re ETC Field Servs.*, 2025 WL 582320, at *4 ("[T]he business court was designed for prompt and uniform resolution of complex business litigation . . . .").

The parties' agreement also reflects the parties' manifest intent to continue adjudicating their present dispute without having to non-suit and refile. Indeed, both parties recognize that non-suiting and refiling is not a cost-free option. There are real and substantial costs to forcing the parties to non-suit and refile this case, which

---

[15] The delays resulting from the Trial Court's subject–matter jurisdiction deliberations have further affected Lone Star's ability to prepare the case for trial. *Able Supply Co. v. Moye*, 898 S.W.2d 766, 773 (Tex. 1995) ("Both the plaintiffs and the defendants are entitled to full, fair discovery within a reasonable period of time, and to have their cases decided on the merits.'). And despite Texas Rule of Appellate Procedure 29.5, the Trial Court has refused to adjudicate the parties' discovery disputes while this appeal has been pending, which has caused the discovery remaining in the lawsuit to largely grind to a halt—a far cry from the efficient processes envisioned by the Legislature when it enacted H.B. 19. *See* H.B. 19, § 1 (implementing numerous statutes requiring the "fair and efficient" resolution of Business Court cases).

has been pending since 2021. Indeed, EagleClaw's counsel acknowledged at the hearing that "ongoing ancillary discovery actions" in other jurisdictions were "ongoing." 1RR52:14–17; *see also* 1RR43:12–44:9 ("There has been a substantial amount of third-party discovery that has been done and that is ongoing. We have a discovery referee. . . . I think there is a possibility that that would create some procedural difficulties with regard to these third parties. Because I can't anticipate what they may do that would, in fact, add costs, elongate this case . . . ."); 1RR52:7–13 ("[T]here are certain inefficiencies or friction points, et cetera, that despite these parties' best intentions, may arise nonetheless with regard to a remand."). Further, the parties' joint brief in support of removal identified five pending motions that require resolution (1CR29–30 n.2) as well as third-party discovery proceedings Lone Star has pursued against EagleClaw's investors and board members (1CR30–31).

Simply put, there are real and substantial costs associated with requiring the parties to non-suit and refile a case *only to end up in the same court* where the parties may be forced to repeat discovery already performed.

## CONCLUSION AND PRAYER

The Trial Court erred when it determined that it lacked subject-matter jurisdiction to hear this dispute. The Trial Court's order should be reversed.

Lone Star asks this Court to determine that the Trial Court has subject-matter jurisdiction over the dispute, reverse the Trial Court's Order, and remand this case to the Trial Court where discovery can proceed and a trial can be promptly had.[16]

Lone Star requests all other relief to which it may be entitled.

---

[16] Other than the Trial Court's subject-matter jurisdiction determination, there are no other impediments to effectuating the parties' joint removal to Business Court. Accordingly, upon determining that the Trial Court has subject-matter jurisdiction over this dispute, the matter can proceed in the Trial Court.

Respectfully submitted,

/s/ William J. Boyce
William J. Boyce
State Bar No. 02760100
bboyce@adjtlaw.com
Alexander Dubose & Jefferson LLP
1844 Harvard Street
Houston, Texas 77008-4342
Telephone: (713) 523-2358
Facsimile: (713) 522-4553

Andrew P. Price
State Bar No. 24002791
andrew.price@nortonrosefulbright.com
Rafe A. Schaefer
State Bar No. 24077700
rafe.schaefer@nortonrosefulbright.com
Timothy Shinn
State Bar No. 24125409
timothy.shinn@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1550 Lamar, Suite 2000
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

**ATTORNEYS FOR LONE STAR NGL PRODUCT SERVICES, LLC**

**CERTIFICATE OF COMPLIANCE**

Based on a word count run in Microsoft Word, this brief contains 7,161 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/William J. Boyce
William J. Boyce

## CERTIFICATE OF SERVICE

On March 10, 2025, I electronically filed this brief with the Clerk of the Court

using the eFile.TXCourts.gov electronic filing system which will send notification

of such filing to the following:

Fields Alexander
State Bar No. 00783528
falexander@beckredden.com
Thomas E. Ganucheau
State Bar No. 00784104
tganucheau@beckredden.com
Mary Kate Raffetto
State Bar No. 24098296
mkraffetto@beckredden.com
Garrett S. Brawley
State Bar No. 24095812
gbrawley@beckredden.com
Cassie Maneen
State Bar No. 24120989
cmaneen@beckredden.com
BECK REDDEN LLP
1221 McKinney St., Suite 4500
Houston, Texas 77010

*/s/William J. Boyce*
William J. Boyce

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angelina Martinez on behalf of Andrew Price
Bar No. 24002791
angelina.martinez@nortonrosefulbright.com
Envelope ID: 98271902
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Lone Star NGL Product Services, LLC, as Joint Appellant
Status as of 3/10/2025 3:49 PM CST

Associated Case Party: EagleClaw Midstream Ventures LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Fields Alexander | | falexander@beckredden.com | 3/10/2025 2:58:23 PM | SENT |
| Parth S.Gejji | | pgejji@beckredden.com | 3/10/2025 2:58:23 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 3/10/2025 2:58:23 PM | SENT |
| Garrett S.Brawley | | gbrawley@beckredden.com | 3/10/2025 2:58:23 PM | SENT |
| Cassie Maneen | | cmaneen@beckredden.com | 3/10/2025 2:58:23 PM | SENT |
| Thomas Ganucheau | | tganucheau@beckredden.com | 3/10/2025 2:58:23 PM | SENT |

Associated Case Party: Lone Star NGL Product Services, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rafe Schaefer | 24077700 | rafe.schaefer@nortonrosefulbright.com | 3/10/2025 2:58:23 PM | SENT |
| Abraham Chang | 24102827 | abraham.chang@nortonrosefulbright.com | 3/10/2025 2:58:23 PM | SENT |
| William Boyce | 2760100 | bboyce@adjtlaw.com | 3/10/2025 2:58:23 PM | SENT |
| Timothy Shinn | 24125409 | Timothy.shinn@nortonrosefulbright.com | 3/10/2025 2:58:23 PM | SENT |
| Andrew Price | | andrew.price@nortonrosefulbright.com | 3/10/2025 2:58:23 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Angelina Martinez | | angelina.martinez@nortonrosefulbright.com | 3/10/2025 2:58:23 PM | SENT |
| Cindy Hickman | | cindy.hickman@nortonrosefulbright.com | 3/10/2025 2:58:23 PM | SENT |